The Honorable Judges of the United States Court of Appeals stand in for the 7th Judicial Circuit. Steer ye, steer ye, steer ye. All persons having business before this Honorable Court are admonished to draw near and give their attention, as the Court is now sitting. God save the United States and this Honorable Court. Good morning, everyone. Good morning, Judge Rovner. Good morning. My first case for argument this morning is United States v. Michael Eisenga. Mr. Fernholz. Thank you. Good morning, Your Honors, and may it please the Court. My name is Matthew Fernholz, and I represent the defendant appellant Michael Eisenga. The primary issue before the Court in this case is whether the corporate form is entitled to the same protection and distinctions in criminal restitution proceedings as it is in the civil context. Here, the government sought to garnish funds not of Mr. Eisenga, but of an LLC that was a party to a 15-year-old TIF agreement with the city of Columbus. And Mr. Eisenga was not the member of that LLC, which was Columbus Commerce Center. Rather, the member of that LLC was another LLC, First American Properties. We submit that in its decision below, the District Court incorrectly pierced the corporate veil on two LLCs, Columbus Commerce Center and First American Properties, without sufficient evidence that these two entities were the alter egos of Mr. Eisenga. And the District Court reached this result only after finding the government had failed to meet its burden at a motion hearing and a subsequent evidentiary hearing. The decision below will have ramifications beyond this case or the criminal restitution context, as veil piercing is typically used in civil suits. And so we ask that this Court reverse the District Court's decision to issue the garnishment order. I'd like now to turn to the elements that are at issue in veil piercing claims. Mr. Bernholz, before you do that, it looks like below with the District Court that your arguments about piercing the corporate veil were focused on First American and not on Columbus Commerce Center, that you were raising for the first time on appeal your challenges to piercing the corporate veil of Columbia Commerce Center. I'm just going to call it CCC. Why haven't you waived those arguments? Well, Judge, the government has not argued otherwise, but I don't believe it would be fair to say that we did not argue below as to veil piercing. I did not see that argument in your briefing below, and the District Court did not address it below. And I went through all the briefs and the materials in support of it, and the whole focus was on First American. And, Judge, First American Properties is, of course, the member of CCC. And so the arguments to some extent are intertwined, but it was always our position that the TIF agreement between the City of Columbus and Columbus Commerce Center was a legitimate agreement. The government's never challenged it. And so to pierce the corporate veil and to get at these TIF funds, the District Court essentially pierced it twice. It went through CCC and then First American Properties. I see it much the way Judge St. Eve sees it, with one small difference. In your opening brief in this court, you focused on CCC and First American Properties jointly and never argued that such proof specific to Columbus Commerce Center was needed. So, again, why isn't the whole thing waived? And, Your Honor, respectfully, I just disagree that the record below shows that we didn't argue veil piercing as to both LLCs. And, in fact, I had an exchange with the District Court judge, I believe it was at the second hearing, when I said the issue before the court is whether to pierce the corporate veil and garnish these funds of CCC. And the District Court said, no, it's not, Mr. Bernholz. We're here to deal with both. And so the District Court wanted both issues addressed and we briefed that thoroughly. And so, respectfully, Your Honors, I disagree and believe we have taken the position consistently that the veil piercing doctrine doesn't apply to either LLC. And the District Court erred by applying it to both of them. So, you know, the three elements that come from the Olson case are that . . . Because even if . . . I'm sorry. This is a hard day for all of us. Even if we address the argument in your reply brief that the court misapplied the corporate veil piercing test by failing to solely focus on CCC, wouldn't that just mean that a remand was necessary for the court to address the test as to that entity specifically? I suppose that is one possible remedy, Judge Robner. I wouldn't deny that. I mean, there could be a remand with instructions to focus exclusively on CCC, which is what I was trying to direct the District Court to that position because the garnishment solely related to this TIF arrangement between CCC and the City of Columbus. And so, we argued again and again to the District Court that, look, this was a legitimate TIF arrangement and it long predated Mr. Eisinger's criminal sentence. And so, there was no fraudulent intent in having the remaining TIF payments paid out. You know, I have one question that I really need to get out of the way because you cite, you know, to the declaration of Sam Miller, the CPA, as establishing that the transfer of funds for Eisinger's personal use in this case were proper. But Miller wasn't hired until 2023 and has no personal knowledge as to how the transfers were handled and the accounts used as relates to where we are. How is that of any relevance given Miller's lack of knowledge? Your Honor, the Miller affidavit was an attempt to explain to the court why certain transfers would be made between different LLCs. Mr. Eisinger, in some of the time period in question, he was incarcerated in prison, not running the business. And so, we had attempted to explain to the District Court, look, these are transfers between LLCs that are normal business transfers. They're not fraudulent transactions. They can be deemed member draws. They can be deemed loans. But it was an appropriate accounting for those LLCs. And so, that was the purpose in citing to that declaration. But he even acknowledged that he didn't have personal knowledge of the underlying facts or the veracity of what your client said during his deposition. And that's correct. And we don't submit that his declaration supplants Mr. Eisinger's deposition testimony, rather. It was he is the outside accountant who is now working for Mr. Eisinger and his various LLCs, and he was offering his interpretation and explanation of some of the testimony. Your Honor, as I just want to note, I see him approaching two minutes. I had submitted a breakdown of eight and two, but it looked like it started me with two minutes, so I just wanted to reserve the balance of my time. That's fine. Thank you. Thank you. Thank you. Oh, I'm not going to try to pronounce your name. Miss Stelhus?   Okay. Thank you. Good morning. May it please the Court. My name is Megan Stelgis, and I represent the United States. As part of his plea agreement, defendant agreed to pay restitution. He agreed that it was owed immediately and that he was to liquidate his non-exempt assets in good faith to satisfy that obligation. He's not made significant progress, and he failed to disclose a contractual right to about $190,000 of TIF payments due to his LLC. Because of how defendant uses his LLCs and chooses to extract income from them, he will be able to divert these funds from the victim credit union unless this court upholds the district court's order piercing the corporate veils. I have three points. First, the district court did not err, as defendant argued in his reply brief, when it considered the activities of First American, which wholly owns CCC. In order to get from Isenga, who personally owes the restitution obligation to CCC, the district court had to go through First American, so it had to pierce two corporate veils. And to your earlier question— May I just stop you for a second? I'm really sorry. But in his deposition, Mr. Isenga stated that the Michael Isenga Living Trust is actually the owner of all the different LLCs. But the district court opinion states that Isenga still has control of First American Properties, LLC, of which his Living Trust, of course, is the sole member. Would you just clarify whether Isenga or the Living Trust is the owner of the LLCs, including First American Properties? And would you tell me if you think it matters in this whole analysis? It's my understanding, Your Honor, based on the deposition testimony, that Michael Isenga's Living Trust owns First American, but defendant hasn't asserted that there's any sort of corporate veil that he's entitled to the protection of with respect to that trust. The only claims he's raised are with regard to the LLCs. So it doesn't matter in our analysis, or it does matter? What do you say? It doesn't matter because defendants forfeited any argument that his Living Trust entitles him to some sort of additional protection. Okay. Thank you. Ms. Douglas, do we know the corporate structure for CCC Lot 2, where the payments were going? The payments were going to Columbus Commerce Center, not CCC Lot 2. Okay. Do we know anything about the structure of CCC Lot 2? Is it independent from First American Property? I don't believe it's one of First American's subsidiaries. Okay. I couldn't see anything else in the record about who owned or who was a member of CCC Lot 2. And I don't have any additional information in that regard. My second point is that fraud is not the standard for veil piercing. The government did not need to prove any nexus between CCC, which was entitled to the TIF funds, and defendants' criminal conduct that led to the conviction in this case. And I raise that because it's a point defendant made in his reply brief. In order to pierce the corporate veil, the government had to prove that Izenga controlled the LLCs and that he was using that control to avoid an obligation or cause an injustice. And here, that obligation is his restitution obligation. And I'd like to illustrate this point by briefly discussing wage garnishment because both parties agree that the government can and regularly does garnish legitimate wages that have nothing to do with fraud and applies those funds to restitution. So if defendant earned legitimate wages or took a salary from his LLCs, unquestionably, the government would be able to garnish those funds. But defendant doesn't do that. He's opted to not take a salary or pay himself wages from his LLCs because he controls them. And because he's able to determine how he extracts income from his LLCs, he's able to divert that income away from his victim, the credit union. And this is precisely the type of conduct that veil piercing is designed to address. It doesn't matter that there's nothing fraudulent about the TIF contract, and it doesn't matter that the TIF contract was entered into long before the bank fraud that gave rise to the criminal conviction. My third point is very brief, which is just that defendant has forfeited, has abandoned, excuse me, his abstention argument. In its opposition brief, the government argued that the state court litigation and the federal garnishment action concern two completely different pots of money. The state court litigation concerns already dispersed TIF funds, while the federal litigation concerns TIF funds that the city of Columbus is still holding. And we explain that there's no conflict, then, between the proceedings. And defendant did not address the substance of that argument in his reply brief, so he's abandoned it. And, of course, the city has agreed to retain those funds pending a determination from this court. Correct, Your Honor. So they're there. They're there. And there'd be no concern about an inconsistent judgment. No, even if there were overlapping garnishment orders with respect to those funds, it wouldn't be conflicting. The funds would just be dispersed according to regular priority rules, and that's not a conflict. Unless the court has further questions, I will ask it to affirm the order of the district court. Thank you. Mr. Fernholz, anything further? Thank you, Your Honors. Yes, I do want to touch on this younger abstention point just briefly. If the court will allow me to provide an update to the court on what's going on in the Columbia Circuit Court proceedings. As luck would have it, we are going to be before the judge tomorrow on two motions related to this. I think it does actually bear mentioning, and I can supplement the record with additional briefing if the court would permit, but after we filed our reply brief, the Circuit Court in Columbia County entered a charging order as to First American Properties and Columbus Commerce Center. We then took the position that we no longer opposed Alliance's attempt to garnish the funds. There's a judgment entered against CCC and Mr. Isenga. We said we did not oppose the garnishment of the funds, which were for the two TIF payments of $110,000, and the court granted that order and said those funds shall be garnished. Alliance then took the position, and we'll get decided tomorrow, that they don't want to garnish anymore because they're concerned that the state court action they've taken would implicate the federal government's garnishment action. They have not provided substantiation for that position. They've represented to the court that it's based on statements the U.S. Attorney's Office has made to them that they shouldn't proceed in state court while this federal action is  So I understand that's sort of the argument in reverse, but it is, that is an ongoing issue that could get resolved tomorrow in the state court. So I wanted to point that out, and if the court would like supplementation on that, I'm happy to provide it. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.